**Adekunle ERINKITOLA (a.k.a. Rico Cartier), Petitioner,**

v.

**UNITED STATES of America, Defendant.**

**No. 95–CV–04.**

United States District Court,
N.D. New York.

Oct. 2, 1995.

Adekunle Erinkitola (a.k.a. Rico Cartier), White Deer, Pennsylvania, Plaintiff Pro Se.

Thomas J. Maroney, United States Attorney for the Northern District of New York, Albany, New York, for Defendants; Barbara D. Cottrell, Assistant U.S. Attorney, of counsel.

## MEMORANDUM, DECISION & ORDER

McAVOY, Chief Judge.

Petitioner moves pursuant to 28 U.S.C. § 2255 to vacate, set aside, or correct the sentence he received in 1992 after pleading guilty to drug conspiracy charges. The basis for this action is petitioner's assertion that the post-conviction administrative forfeiture of his car and $8,100.00 in cash subjected him to Double Jeopardy in violation of the Fifth Amendment. Petitioner's motion is denied.

## I. Background

### A. Facts

On April 10, 1992, U.S. Customs agents followed petitioner to a Chicago parking lot, where he had arranged to complete a drug transaction. Petitioner disputes defendant's contention that he "appeared for the transaction driving a 1988 Alpha Romeo" because, he claims, he parked his car about a block away from the parking lot. U.S. Customs agents arrested petitioner and then seized the $8,050.00 concealed in his underwear, the fifty dollars in his jacket pocket, and his Alpha Romeo.

On July 24, 1992, after the criminal case against petitioner had been removed to the Northern District of New York, petitioner pled guilty to the two drug conspiracy charges that the Government brought against him pursuant to 21 U.S.C. §§ 841(a)(1), 846, 952(a), 960(b)(2)(a) and 963. Sentencing was scheduled for October 7, 1992. On August 31, 1992, the U.S. Attorney's Office in Albany, New York, asked the U.S. Customs office in Chicago to postpone planned administrative forfeiture proceedings until after completion of the criminal case. On September 2 and again on October 2, 1992, petitioner filed motions with the Customs Service to return the seized property and requested administrative consideration of his petitions. Apparently, both petitions were denied. On April 21, 1993, the U.S. Attorney's Office in Albany notified the U.S. Customs office in Chicago that they could proceed with administrative forfeiture of the car and currency.

This Court sentenced petitioner to fifty-one months' imprisonment on July 16, 1993. On September 29, 1993, the U.S. Customs Office notified petitioner in writing that his first motion for return of the seized property had been denied and that he had thirty days to file a supplemental petition. The U.S. Customs Office wrote petitioner again on November 3, 1993, to inform him that he had failed to file a supplemental petition and that it would therefore commence a forfeiture action the following week. On November 30, 1993, the car and currency were forfeited to the United States. All tolled, the currency and the proceeds from the sale of the car

amounted to $14,250.00. The U.S. Customs Service deducted $3,664.00 for "Customs Property Management Costs," kept twenty per cent of what remained ($2,117.20) and directed the rest ($8,468.80) to the New York State Police as an asset sharing payment.

### B. Law

#### 1. *Halper*

"[T]he Double Jeopardy Clause protects against three distinct abuses: a second prosecution for the same offense after acquittal; a second prosecution for the same offense after conviction; and multiple punishments for the same offense." *U.S. v. Halper*, 490 U.S. 435, 440, 109 S.Ct. 1892, 1897, 104 L.Ed.2d 487 (1989). Petitioner's § 2255 motion implicates the third kind of abuse. Whether a criminal conviction and a civil penalty, such as an administrative forfeiture, constitute two punishments for the same offense turns on the nature of the civil sanction. "[U]nder the Double Jeopardy Clause a defendant who already has been punished in a criminal prosecution may not be subjected to an additional civil sanction to the extent that the second sanction may not fairly be characterized as remedial, but only as a deterrent or retribution." *Id.* at 448–49, 109 S.Ct. at 1901–02.

The Supreme Court declined to announce a bright-line test for distinguishing in all cases civil sanctions which merely accomplish the remedial purpose of making the Government whole from those that are "so disproportionate to the damages caused that [they] constitute[ ] a second punishment." *Id.* at 449–50, 109 S.Ct. at 1902. However, the Court did announce a "rule of reason" for courts to apply in "rare" cases where a fixed-penalty provision subjects an offender to a sanction "overwhelmingly disproportionate to the damages he has caused":

> Where a defendant previously has sustained a criminal penalty and the civil penalty sought in the subsequent proceeding bears no rational relation to the goal of compensating the Government for its loss, but rather appears to qualify as "punishment" in the plain meaning of the word, then the defendant is entitled to an ac-

counting of the Government's damages and costs to determine if the penalty sought in fact constitutes a second punishment.

*Id.* at 449, 109 S.Ct. at 1902. In those rare cases, trial courts must determine, on the basis of the accounting, whether the civil sanction the Government receives is so large that it effectively imposes a second punishment. *Id.* at 449, 109 S.Ct. at 1902.

The Court clarified the breadth of its holding with a few fixed rules. For instance, "fixed-penalty-plus-double-damages provisions" do not implicate the Double Jeopardy Clause because they merely serve to compensate the Government for its damages and costs. *Id.* at 449, 109 S.Ct. at 1902. The Court also noted that its holding would enable the Government to "seek[ ] and obtain[ ] both the full civil penalty and the full range of statutorily authorized criminal penalties in the same proceeding." *Id.* at 450, 109 S.Ct. at 1903.

### 2. *Whalers Cove*

The Second Circuit applied *Halper* to a civil drug forfeiture statute in *U.S. v. Certain Real Property Known as 38 Whalers Cove Drive,* 954 F.2d 29 (2d.Cir.), *cert. denied sub. nom. Levin v. United States,* — U.S. —, 113 S.Ct. 55, 121 L.Ed.2d 24 (1992). In that case, the police arrested the defendant after he had completed two drug transactions in his condominium. The police who searched the premises incident to arrest failed to discover any drugs, drug paraphernalia, drug records, weapons, or large amounts of cash. After pleading guilty, the defendant received a probationary sentence and a small fine. *Id.* at 32.

One month after the arrest, the U.S. Government instituted an *in rem* forfeiture against the defendant's condominium under 21 U.S.C. § 881(a)(7). Pursuant to an *ex parte* seizure warrant for the premises, U.S. Marshals seized the property. Their extensive search of the condominium failed to uncover any signs of narcotics activity. *Id.* The defendant timely filed a claim of ownership to the property and moved to dismiss the complaint; the government cross-moved for summary judgment. *Id.*

The court stated that if a civil forfeiture is overwhelmingly disproportionate to the value of the offense, it constitutes punishment unless the Government shows that it serves "articulated, legitimate civil purposes." *Id.* at 35. Examples of such purposes include: 1) *"in rem* forfeiture to remove instrumentalities of crime from general circulation and prevent further illicit use of harmful objects ...*"*; 2) substitution for a civil fine, in order to foil criminal success by " 'eliminating its resources and instrumentalities' "; and 3) compensating the government for its investigative and enforcement costs and any damages it may have incurred as the direct result of criminal acts. *Id.* at 35–36.

The Court went on to hold that a civil forfeiture pursuant to 21 U.S.C. § 881(a)(7) is not presumptively punitive "where the seized property has been used substantially to accomplish illegal purposes, so that the property itself can be said to be 'culpable' or an instrumentality of crime." *Id.* at 36. If the seized property is not an instrumentality of crime, the court added, and its total value is disproportionate to the value of the drugs involved, then a rebuttable presumption arises that the forfeiture is punitive. *Id.* at 36. In that case the Government must show via a *Halper* accounting that the forfeiture accomplishes legitimate civil purposes. *Id.* at 37.

Applying these rules to the facts of *Whalers Cove,* the court concluded as matter of law that the forfeiture of the defendant's $68,000 equity interest in his condominium, which the government conceded was not an instrumentality of crime, was overwhelmingly disproportionate to the total value of the drugs the defendant sold there: $250.00. *Id.* The court resolved the double jeopardy issue on other grounds, rendering it unnecessary for the Government to perform a *Halper* accounting on remand.

### II. Discussion

In light of the cases just discussed, petitioner's double jeopardy arguments are meritless. Regardless of whether the value of the forfeiture is suitably proportionate, petitioner's Alpha Romeo and $8,100.00 in

cash were instrumentalities of the drug crime for which he was convicted.

## A. Proportionality

The Second Circuit's proportionality determination differs slightly from the Supreme Court's. In *Halper*, the Court compared the government's expenses ($16,000) to the civil penalty imposed on the defendant ($130,000) and found the latter sufficiently disproportionate to the former to necessitate a governmental accounting on remand. *Halper*, 490 U.S. at 452, 109 S.Ct. at 1904. In *Whalers Cove*, the Second Circuit compared the value of the defendant's interest in the seized property ($68,000) to the value of the controlled substances involved in the statutory violation ($250) and found the sanction overwhelmingly disproportionate as a matter of law. *Whalers Cove*, 954 F.2d at 36–37.

Petitioner does not contest the Government's assertion that he intended to pay the $8,100.00 he carried to the scene of the planned drug transaction as only a partial payment for 547.6 grams of heroin. In the absence of a more fully developed factual record and in light of the discrepancy between the Supreme Court's and the Second Circuit's methods for computing proportionality, this Court is unprepared to rule as a matter of law on whether the $14,250 forfeiture of petitioner's car and currency is sufficiently disproportionate to Government's costs or to the value of the drugs involved to constitute a penalty for double jeopardy purposes. At any rate, the Court is prepared to decide petitioner's motion on other grounds.

## B. Instrumentality

■ Even if a civil forfeiture is overwhelmingly disproportionate, it does not constitute punishment if it serves "articulated, legitimate civil purposes" such as removing an instrumentality of crime from general circulation or making the Government whole. *Whalers Cove*, 954 F.2d at 35–36. *See also United States v. $2,500 in U.S. Currency*, 689 F.2d 10, 13 (2d Cir.1982) (stating in dicta that forfeiture of vehicles and money used in drug trafficking has a number of remedial, nonpunitive purposes, including "impeding the success of the criminal enterprise by elimi-

nating its resources and instrumentalities . . . and helping to finance the government's efforts to combat trafficking."), *cert. denied, Aponte v. U.S.*, 465 U.S. 1099, 104 S.Ct. 1591, 80 L.Ed.2d 123 (1984). The forfeiture of petitioner's car and cash served both of these legitimate civil purposes.

### 1. The 1988 Alpha Romeo

Petitioner's Alpha Romeo was an instrumentality of the drug conspiracy crime for which he was convicted. Under 21 U.S.C. § 881(a)(4) (1988 & Supp. V 1995), "all . . . vehicles . . . which are used . . . to transport, or in any manner to facilitate the transportation, sale, receipt, possession, or concealment of [controlled substances which have been manufactured, distributed, dispensed, or acquired in violation of Title 21]" shall be "subject to forfeiture to the United States and no property rights shall exist in them."

■ Case law in this circuit clearly establishes that when someone drives a car to the place where he is to receive illegal drugs being transported to him, he thereby uses the car to "facilitate" the transportation of controlled substances within the meaning of the § 881. *United States v. One Dodge Coupe*, 43 F.Supp. 60, 61–62 (S.D.N.Y.1942); *see also U.S. v. One 1974 Cadillac Eldorado Sedan*, 548 F.2d 421 (2d Cir.1977); *United States v. One 1941 Pontiac Sedan*, 83 F.Supp. 999, 1001 (S.D.N.Y.1948). It is therefore irrelevant, even if it is true, that law enforcement officials failed to discover any drugs or contraband when they searched petitioner's car. *Dodge Coupe*, 43 F.Supp. at 61–62.

■ Petitioner argues that because he left his car one or one-and-a-half blocks away from the site of the arranged heroin transaction, his car was not an instrumentality of the crime to which he pled guilty. Even if petitioner's factual statement is true, it does not alter the conclusion that he used his car to get to the place where he planned to receive drugs, which renders the Alpha Romeo an instrumentality of the crime. If buyers of illegal drugs could shield their cars, boats, and planes from forfeiture merely by parking, docking or landing them at least two

blocks away from the sites of the drug transactions, § 881 would collapse.

### 2. The $8,100.00 in Cash

 The cash that petitioner carried with him to the parking lot where the drug transaction was to occur was also an instrumentality of the crime. Pursuant to the same forfeiture provision cited above, "all moneys ... used or intended to be used to facilitate any violation of this title" shall be subject to forfeiture to the United States. 21 U.S.C. § 881(a)(6).

It is undisputed that petitioner intended to use the $8,100.00 he was carrying at the time of his arrest to facilitate a drug transaction in violation of Title 21. That makes the money an instrumentality of the crime. As Judge Leval noted when he analyzed § 881(a)(6) in *$2,500 in U.S. Currency,* 689 F.2d at 14, "[Congress'] indisputable legislative finding that money in the narcotics trade finances and assists future trade at least as much as vehicles and containers [supported its] decision that [it] should likewise be seized in the effort to impede such traffic."

### III. Conclusion

Because petitioner's car and cash were instrumentalities of his crimes, their forfeiture served legitimate civil purposes. Therefore, whether or not the proceeds of the forfeiture were overwhelmingly disproportionate to the Government's costs, or to the value of the heroin involved in the transaction for which he was convicted, the forfeitures did not constitute a second punishment in violation of the Double Jeopardy Clause. The sentence this Court imposed on petitioner is thus perfectly consistent with the Fifth Amendment.

Petitioner's § 2255 motion to vacate, set aside, or correct his sentence is DENIED.

**IT IS SO ORDERED.**