**Ye Wen HONG, Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

**No. 95–CV–0957 (RR).**

United States District Court,
E.D. New York.

Feb. 29, 1996.

◎➟3

Ye Wen Hong, Danbury, CT, pro se.

Zachary W. Carter, United States Attorney by Scott Dunn, Asst. U.S. Atty., Brooklyn, NY, for U.S.

### ORDER

RAGGI, District Judge.

The court has carefully reviewed the report and recommendation of Magistrate Judge Gold in this case and these objections. It hereby adopts the recommendation in its entirety substantially for the reasons stated in the report. The court does note that, at the time of sentence in plaintiff's criminal case, this court was aware that agents had seized approximately $16,000 at the time of plaintiff's arrest. It understood that plaintiff attributed this money to Mo Ren Chu, the boyfriend who orchestrated the heroin transaction in her case. Thus, it appeared that it was Chu's money—not plaintiff's—that was seized. (See PSR ¶ 5). Had the court understood at the time of sentence that plaintiff was claiming these monies as *her own*, it would undoubtedly have imposed a fine or ordered restitution to the Treasury for CJA fees incurred for plaintiff's defense. Motion to dismiss as to currency granted. Jewelry to be sent to address provided on or before 3/29/96.

### REPORT AND RECOMMENDATION

GOLD, United States Magistrate Judge.

Plaintiff Ye Wen Hong, proceeding *pro se*, brings this action seeking the return of currency and property seized from her by law enforcement officers when she was arrested on January 28, 1993. The government has moved to dismiss. By order dated July 12, 1995, the Honorable Reena Raggi referred this matter to me for report and recommendation. For the reasons set forth below, I respectfully recommend that the government's motion to dismiss be granted.

### BACKGROUND

On January 28, 1993, plaintiff was arrested and charged with possessing and intending to distribute drugs. At the time of her arrest, agents of the Drug Enforcement Administration ("DEA") seized $16,306 in currency and various items of jewelry from plaintiff.

After plaintiff's arrest, the government initiated forfeiture proceedings against the $16,306 in currency pursuant to 21 U.S.C. § 881. On March 22, 1993, the DEA sent plaintiff written notice of its intent to forfeit the seized currency. The notice was sent via certified mail, return receipt requested, to the jail where plaintiff was then incarcerated. *See* Declaration of William J. Snider, ¶ 4(b), submitted with Defendant's Memorandum of

Law ("Snider Decl."); Notice of Seizure, Snider Decl. Ex. 1. Plaintiff apparently received the notice of seizure letter at the Metropolitan Correctional Center ("MCC") on March 26, 1993. *See* Snider Decl., ¶ 4(b); Postal Receipt Card, Snider Decl. Ex. 2.[1] Notice of the seizure was also published in *USA Today*, a newspaper of general circulation in the Eastern District of New York, for three consecutive weeks beginning on March 31, 1993. Snider Decl. ¶ 4(b) and Ex. 13.

Both the notice of seizure letter and the publication notice explained that a claimant could challenge the forfeiture action in federal court by filing a claim and cost bond, or an affidavit of indigency in lieu of the cost bond, within twenty days of the first publication of the notice of the seizure. The notices also explained that a claimant had the right to file a petition seeking remission or mitigation of the forfeiture within thirty days of receiving the notice. *See* Notice of the Seizure, Snider Decl. Ex. 1; Publication Notice, Snider Decl. Ex. 13.

On May 7, 1993, not having received a properly filed claim or response from plaintiff within the twenty-day statutory period, the DEA issued a Declaration of Forfeiture with respect to the $16,306 in currency. *See* Declaration of Forfeiture, Snider Decl. Ex. 14.

On March 9, 1995, plaintiff filed this action seeking the return of her currency.[2] Plaintiff asserts that the government violated her right to due process by failing to give her proper notice of the seizure and by forfeiting her money without first holding a hearing to determine whether it was the proceeds of illegal activity. Finally, plaintiff claims that the currency was taken from her in violation of the Double Jeopardy and Excessive Fines

Clauses of the Fifth and Eighth Amendments. *See* Plaintiff's Statement of Claims at 5.

The government has moved to dismiss on the ground that this Court lacks subject matter jurisdiction because plaintiff's currency was the subject of a properly executed administrative forfeiture. The government further contends that the administrative forfeiture did not violate the Double Jeopardy or Excessive Fines Clauses of the Constitution.

## DISCUSSION

### The Jewelry

Plaintiff claims that DEA agents seized various items of jewelry from her at the time of her arrest. Specifically, plaintiff claims that agents seized a Rolex watch, a Christian Dior watch, a gold neckchain and an ankle bracelet. *See* Plaintiff's Statement of Claims, Ex. 2. The government concedes that this property was seized from plaintiff upon her arrest and never forfeited, and states that it will be returned as soon as plaintiff provides an address where the property may be sent. *See* Defendant's Memorandum of Law at 3, n. 2. Accordingly, I respectfully recommend that plaintiff be directed to provide the government with the requested information by February 23, 1996, and that the government be directed to return plaintiff's property to the designated address no later than thirty days thereafter.

### The Currency

### I. Jurisdiction Over Plaintiff's Claim

Plaintiff's primary claim is that the DEA's forfeiture of her currency was invalid and denied her due process because the DEA

---

1. On March 22, 1993, the DEA sent four other notice of seizure letters via certified mail, return receipt requested, to plaintiff at 42–08 Forley Street, Queens, New York under four different names. All four letters were unclaimed and marked "returned to the sender". *See* Snider Decl. Exs. 3, 4, 5, 6, 7, 8, 11, and 12.

2. Plaintiff alleges in her complaint that she seeks relief pursuant to 42 U.S.C. § 1983. By its express terms, however, § 1983 does not apply to actions of the federal government or its officers. *See, e.g., Murray v. United States Dep't of Justice*, 821 F.Supp. 94, 100 (E.D.N.Y.), *aff'd*, 14 F.3d

591 (2d Cir.1993). Ye Wen Hong is proceeding *pro se*, however, and this Court therefore construes her pleadings and papers liberally. *Onwubiko v. United States*, 969 F.2d 1392, 1397 (2d Cir.1992) (relying on *Haines v. Kerner*, 404 U.S. 519, 520, 92 S.Ct. 594, 595, 30 L.Ed.2d 652 (1972)). Because plaintiff filed this action after the termination of the underlying criminal case against her, her complaint will be treated as commencing a civil action for the return of property. *Onwubiko*, 969 F.2d at 1397; *see also Rufu v. United States*, 20 F.3d 63, 65 (2d Cir.1994).

failed to provide her with proper notice of the forfeiture and failed to hold a hearing to determine whether the currency was derived from plaintiff's illegal conduct. The government contends that the forfeiture was procedurally proper and statutorily authorized, and that the district court therefore lacks jurisdiction to review its merits.

■ It is well-settled that, once the administrative process has begun, the *res* subject to forfeiture is removed from the district court. As a result, the court's jurisdiction is limited to a review of the procedural propriety of the forfeiture. *See Toure v. United States,* 24 F.3d 444, 446 (2d Cir.1994); *United States v. One 1987 Jeep Wrangler,* 972 F.2d 472, 480 (2d Cir.1992); *Onwubiko v. United States,* 969 F.2d 1392, 1398 (2d Cir. 1992).

■ As indicated in the Declaration of Forfeiture, plaintiff's currency was seized pursuant to 21 U.S.C. § 881. Section 881(a)(6) renders currency involved in narcotics transactions subject to forfeiture. Forfeitures pursuant to Section 881 are governed by the procedures applicable to forfeitures of property for violation of the customs laws. 21 U.S.C. § 881(d). These procedures are set forth in 19 U.S.C. §§ 1602–1619. *See also* 21 C.F.R. §§ 1316.75–1316.79. As provided in these sections, an agency's initiation of administrative forfeiture proceedings divests the district court of jurisdiction unless an interested party files a claim and posts a bond, or submits proof of financial inability to post a bond, within twenty days of the date on which notice of the seizure is published. 19 U.S.C. § 1608; 21 C.F.R. § 1316.76 (1994); 19 C.F.R. § 162.47(e). *See Linarez v. U.S. Dep't of Justice,* 2 F.3d 208, 211 (7th Cir.1993). If a claimant chooses not to file a claim and post a bond within the allotted period of time, an administrative forfeiture occurs by default and may not be challenged in district court. 19 U.S.C. § 1609(a); 21 C.F.R. § 1316.77. *See also One 1987 Jeep*

*Wrangler,* 972 F.2d at 479. A declaration of forfeiture issued pursuant to these procedures "ha[s] the same force and effect as a final decree and order of forfeiture in a judicial forfeiture proceeding in a district court of the United States." 19 U.S.C. § 1609(b). Because plaintiff's currency was administratively forfeited pursuant to these procedures, this Court lacks jurisdiction to review the merits of the forfeiture.

## II. *Plaintiff's Notice and Hearing Claims*

■ A district court retains jurisdiction, even after administrative proceedings have begun, to hear a claim that a forfeiture proceeding was procedurally deficient. *Toure,* 24 F.3d at 446. In this case, plaintiff claims that she was denied due process because she did not receive adequate notice or an opportunity for a hearing.

■ Plaintiff first challenges the adequacy of the notice provided to her by the government. Plaintiff acknowledges that she received papers pertaining to the forfeiture proceeding while detained at the MCC.[3] *See* Plaintiff's Objections to Defendant's Motion to Dismiss at 2. Plaintiff nevertheless asserts that the notice of forfeiture provided to her was inadequate because it was in English. Plaintiff argues that her primary language is Cantonese, and that her inability to understand the English-language notice therefore denied her the right to contest the forfeiture in violation of her due process rights. *See* Plaintiff's Objections to Defendant's Motion to Dismiss at 2.

In *Toure,* the Second Circuit explicitly held that an English-language notice satisfies the requirements of procedural due process, even when the recipient of the notice does not understand English and is incarcerated and therefore unable to obtain a translation easily. 24 F.3d at 446; *see also United States v. Inufele,* No. 92 CR 1310(SJ), 1995 WL 761815 (E.D.N.Y. Dec. 12, 1995) (holding that English-language notice to incarcerated

---

**3.** Plaintiff, while acknowledging that she received "some papers" at the MCC, does not explicitly state what papers she received from the DEA. However, because plaintiff refers to these papers in the course of contesting the constitutionality of the notice provided to her by the

DEA, and because there is no indication that any documents other than the Notice of Seizure were sent to plaintiff at the MCC, it is clear that the reference in plaintiff's memorandum is to the Seizure Notice.

claimant whose native language was Yoruban and who had little or no knowledge of English satisfied due process). In light of the Court's decision in *Toure*, the government's use of an English-language notice of seizure letter was reasonable and did not violate plaintiff's constitutional rights.

Plaintiff also asserts that the notice was deficient because due process requires that the government not merely rely upon publication notice to inform plaintiff of the forfeiture proceeding. Plaintiff's Objections to Defendant's Motion to Dismiss at 2. Plaintiff's contention that the government improperly relied upon publication as the only form of notice fails, however, because as plaintiff has acknowledged, she received the notice at the MCC but was unable to understand it.

■ Moreover, in this case the notice provided to plaintiff would have been more than adequate even if she had never actually received it. To satisfy due process, notice must be "reasonably calculated" to notify the claimant of the proceeding. *See, e.g., Weigner v. New York*, 852 F.2d 646, 649–50 (2d Cir.1988) (quoting *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314, 70 S.Ct. 652, 657, 94 L.Ed. 865 (1950)), *cert. denied*, 488 U.S. 1005, 109 S.Ct. 785, 102 L.Ed.2d 777 (1989). This standard does not require that the claimant receive actual notice of a forfeiture proceeding, but rather, that the government act reasonably in selecting and employing a means likely to inform the claimant of the proceeding. *Id.; see also Omoregie v. United States*, No. 94–CV–2098(JG), 1995 WL 761848, at *3 (E.D.N.Y. Dec. 20, 1995) (holding that the "government is not required to insure that mail received and signed for has actually reached the potential claimant in a forfeiture proceeding if it has acted in good faith and has made reasonable efforts to send notices to the correct address of the claimant"); *Balogoun v. United States*, No. CV–92–3868, 1992 WL 394186, at *1 (E.D.N.Y. Dec. 11, 1992), *aff'd*, 14 F.3d 590 (2d Cir.1993).

■ In this case, in addition to the notice of seizure published in *USA Today* for three successive weeks, the DEA sent several notices via certified mail to plaintiff at her last known address under various names. Snider Decl., ¶ 4. In addition, the DEA sent plaintiff notice at the MCC while she was incarcerated there, and received a return receipt indicating that the letter had reached its destination. Snider Decl. Ex. 2. In light of the government's repeated good faith efforts to notify plaintiff, the notice provided to plaintiff here was plainly reasonable. Moreover, although plaintiff does not specifically challenge the adequacy of the contents of the notice provided to her, this Court notes that the information contained in the notice is essentially identical to that communicated by the notice deemed constitutionally sufficient in *Sterling v. United States*, 749 F.Supp. 1202 (E.D.N.Y.1990). For all these reasons, the notice provided to plaintiff was plainly adequate.

■ Plaintiff next claims that she was denied due process because the government failed to hold a hearing to determine whether the currency seized at the time of her arrest was the product of illegal activity. Plaintiff's Statement of Claims at 4. Plaintiff indicates that, had such a hearing been held, she would have demonstrated that the currency in issue was money she won playing Baccarat in Atlantic City and money she earned singing in a night club. *See* Plaintiff's Aff. ¶¶ 4–6.

A forfeiture may not be challenged in district court on any basis which could have been raised in an administrative proceeding. *See Linarez v. United States Dep't of Justice*, 2 F.3d 208, 213 (7th Cir.1993); *One 1987 Jeep Wrangler*, 972 F.2d at 479. Although plaintiff could have raised her claim that the forfeited currency was not generated by criminal activity in an administrative proceeding, she chose not to do so. Plaintiff was also provided with the opportunity to contest the forfeiture of her currency in district court by filing a claim and either posting a bond or submitting an affidavit of indigency within twenty days of the first publication of notice of the seizure, but again chose not to follow this procedure. Accordingly, I respectfully recommend that plaintiff's claims that she was not provided with adequate notice or the opportunity for a hearing be dismissed.

### III. *Plaintiff's Double Jeopardy Claim*

 Plaintiff claims that the forfeiture of her property violated the Double Jeopardy Clause of the Fifth Amendment because "it subjected her to a second punishment ... not imposed by the sentencing court." Plaintiff's Statement of Claims at 5. The final declaration of forfeiture, however, was issued on May 7, 1993, prior to plaintiff's criminal trial. *See* Declaration of Forfeiture, Snider Decl. Ex. 14. The jury which heard plaintiff's criminal case was sworn on May 25, 1993, and returned its guilty verdict the following day. Plaintiff was sentenced on December 9, 1993. *See* Docket Entries Numbers 30, 34, 35 and 47 in 93–CR–268(RR). Because the forfeiture preceded both plaintiff's criminal trial and sentencing, it cannot, as plaintiff contends, constitute a second punishment.

Even if plaintiff's criminal case had been completed prior to the issuance of the declaration of forfeiture, plaintiff's double jeopardy claim would nevertheless fail. The Double Jeopardy Clause protects against multiple punishments for the same offense. *United States v. Halper*, 490 U.S. 435, 440, 109 S.Ct. 1892, 1897, 104 L.Ed.2d 487 (1989); *see also United States v. Morgan*, 51 F.3d 1105, 1108 (2d Cir.) ("if a person is twice subject to punishment for the same offense, double jeopardy protection attaches."), *cert. denied,* —— U.S. ——, 116 S.Ct. 171, 133 L.Ed.2d 112 (1995). For the reasons discussed below, this Court concludes that the civil forfeiture of plaintiff's currency pursuant to 21 U.S.C. § 881(a)(6) does not constitute "punishment." [4]

In *Halper*, the Supreme Court held that whether a civil sanction constitutes punishment for purposes of the Double Jeopardy Clause depends upon the purposes served by the sanction, and that labels such as "criminal" and "civil" are not controlling. 490 U.S. at 447–49, 109 S.Ct. at 1901–02. The Court emphasized that a civil sanction will be classified as punishment under the Double Jeopardy Clause when it "serves the [traditional] goals of punishment"—retribution and deterrence—and cannot "fairly be said solely to serve a remedial purpose." *Halper*, 490 U.S. at 448, 109 S.Ct. at 1902. This determination is to be made, at least in part, by considering whether the civil penalty "bears [a] rational relation to the goal of compensating the Government for its loss." 490 U.S. at 449, 109 S.Ct. at 1902.

The task of determining whether a particular civil sanction constitutes punishment requires an individualized determination. *See Halper*, 490 U.S. at 448, 109 S.Ct. at 1901–02. "[T]he question in each case is whether the sanction does more than merely compensate the government for its damages and costs." *Morgan*, 51 F.3d at 1114. A trial court must determine whether the size of the sanction can fairly be attributed solely to remedial purposes or whether, because it is disproportionate to the goal of making the government whole, it must be deemed to have been imposed for purposes of punishment as well. *See Halper*, 490 U.S. at 448–49, 109 S.Ct. at 1901–02; *Morgan*, 51 F.3d at 1115.

Neither the Supreme Court nor the Second Circuit has squarely decided whether the forfeiture of proceeds of narcotics sales pursuant to § 881(a)(6) constitutes punishment for purposes of double jeopardy.[5] A number of circuits, however, applying *Halper*, have held that the forfeiture of illegal proceeds is wholly remedial and not disproportionate to

---

4. Section 881(a)(6) provides in part:

 (a) The following shall be subject to forfeiture to the United States and no property right shall exist in them:
 (6) All moneys ... or other things of value furnished or intended to be furnished by any person in exchange for a controlled substance in violation of this subchapter, all proceeds traceable to such an exchange, and all moneys, negotiable instruments, and securities used or intended to be used to facilitate any violations of this subchapter ...

21 U.S.C. § 881(a)(6) (1988).

5. The Supreme court has recently granted certiorari in two civil forfeiture actions which raise the question of whether punishment has been imposed for purposes of the Double Jeopardy Clause. *See United States v. Ursery*, 59 F.3d 568 (6th Cir.1995), *cert. granted,* —— U.S. ——, 116 S.Ct. 762, 133 L.Ed.2d 707 (1996); *United States v. $405,089.23*, 33 F.3d 1210 (9th Cir.1994), *amended on denial of rehearing*, 56 F.3d 41 (9th Cir.1995), *cert. granted,* —— U.S. ——, 116 S.Ct. 762, 133 L.Ed.2d 707, (1996).

the costs imposed on the government and society by the underlying criminal conduct.

For example, in *United States v. Tilley*, 18 F.3d 295 (5th Cir.), *cert. denied*, —— U.S. ——, 115 S.Ct. 574, 130 L.Ed.2d 490 (1994), the Fifth Circuit held that forfeiture of illegal drug proceeds under § 881(a)(6) did not constitute "punishment." Applying the *Halper* "rational relation" test and citing data reflecting the revenues produced and costs imposed by illegal drug activities, the court found there to be a "rough proportionality" between the $650,000 forfeited and the governmental and societal costs imposed. *Tilley*, 18 F.3d at 299. The court further emphasized that

> [t]he forfeiture of proceeds of illegal drug sales serves the wholly remedial purpose of reimbursing the government for the costs of detection, investigation, and prosecution of drug traffickers and reimbursing society for the costs of combatting the allure of illegal drugs, caring for the victims of the criminal trade when preventative efforts prove unsuccessful, lost productivity, etc.

*Id.* at 299.

The court in *Tilley* further held that, even absent this "rough proportionality," the forfeiture of illegal drug proceeds does not constitute "punishment" because "[w]hen ... the property taken by the government [is] not derived from lawful activities, the forfeiting party loses nothing to which the law ever entitled him." 18 F.3d at 300 (citing *Caplin & Drysdale, Chartered v. United States*, 491 U.S. 617, 626, 109 S.Ct. 2646, 2652–53, 105 L.Ed.2d 528 (1989) (stating that "the government does not violate the Sixth Amendment if it seizes ... robbery proceeds, and refuses to permit the defendant to use them to pay for his defense ... [because] the money, though in [the defendant's] possession, is not rightfully his")). Finding that a forfeiture of proceeds under § 881(a)(6) is not punishment "within the plain meaning of the word," the court concluded that one who possesses illegally obtained proceeds "has no reasonable expectation that the law will protect, condone, or even allow, his continued possession of such proceeds." *Id.; see also United States v. Salinas*, 65 F.3d 551, 553 (6th Cir.

1995); *United States v. $184,505.01*, 72 F.3d 1160 (3d Cir.1995).

The Ninth Circuit, however, has taken a different view. Basing its decision on the Supreme Court's analysis in *Austin v. United States*, 509 U.S. 602, 113 S.Ct. 2801, 125 L.Ed.2d 488 (1993), the Ninth Circuit has held that the forfeiture of illegal proceeds under § 881(a)(6) does constitute "punishment" for double jeopardy purposes. *United States v. $405,089.23*, 33 F.3d 1210 (9th Cir. 1994), *amended on denial of rehearing*, 56 F.3d 41 (9th Cir.1995), *cert. granted*, —— U.S. ——, 116 S.Ct. 762, 133 L.Ed.2d 707 (1996).

In *Austin*, the Supreme Court held that forfeitures under §§ 881(a)(4) and (a)(7)—sections which apply to means of transportation and real estate used in drug transactions—constitute punishment for purposes of the Excessive Fines Clause of the Eighth Amendment. The Court based its holding on the "historical understanding of forfeiture as punishment," the availability of an "innocent owner" defense pursuant to §§ 881(a)(4) and (a)(7), and references to punishment in the legislative history of § 881. 509 U.S. at —— – ——, 113 S.Ct. at 2810–12. The Court in *Austin* also applied *Halper*'s focus on the relationship between the subject of the forfeiture and the costs imposed on the government by the underlying criminal conduct. The Court did not, however, consider the facts of the specific case before it, but instead concluded that "it makes sense to focus on §§ 881(a)(4) and (a)(7) as a whole." 509 U.S. at —— n. 14, 113 S.Ct. at 2812 n. 14. The Court then reasoned that, because "[t]he value of the conveyances and real property forfeitable under §§ 881(a)(4) and (a)(7) ... can vary so dramatically[,] ... any relationship between the Government's actual costs and the amount of the sanction is merely coincidental." *Id.* The Court concluded that forfeitures pursuant to §§ 881(a)(4) and (a)(7) therefore constitute "payment to a sovereign as punishment for some offense," and are therefore "subject to the limitations of the Eighth Amendment's Excessive Fines Clause." 509 U.S. at ——, 113 S.Ct. at 2812.

In *United States v. $405,089.23*, the Ninth Circuit interpreted *Austin* to hold that whether a forfeiture constitutes punishment

requires examination of "the entire scope" of the statute involved and not the particulars of the case in issue. 33 F.3d at 1220. The court noted that the historical understanding of forfeiture as punishment, discussed in *Austin*, applied to § 881(a)(6), that § 881(a)(6) allowed for an "innocent owner" defense, and that the legislative history of the provision "tie[s] forfeiture directly to the commission of specified offenses." *$405,-089.23*, 33 F.3d at 1221. Finally, examining the "entire scope" of the statute, the Ninth Circuit emphasized that § 881(a)(6) reaches more than merely proceeds of narcotics sales, but also money "used to facilitate" narcotics offenses. *Id.*

As discussed above, several circuits have found forfeitures under § 881(a)(6) to be entirely remedial. These circuits, in contrast to the Ninth Circuit, have declined to extend *Austin's* categorical or "entire [statutory] scope" approach beyond the confines of the Eight Amendment and §§ 881(a)(4) and (7), and have instead continued to follow *Halper's* case-by-case approach for determining whether a particular civil forfeiture is punitive or remedial. In *Tilley*, for example, the Fifth Circuit concluded that the Court's concern in *Austin*—that the forfeiture of conveyances under § 881(a)(4) and real estate under § 881(a)(7) could be wildly disproportionate to, and have no correlation with, the costs incurred by the government and society by the underlying criminal conduct—was inapplicable to forfeitures of drug proceeds pursuant to § 881(a)(6). 18 F.3d at 300. Distinguishing forfeitures under §§ 881(a)(4) and (a)(7), the Court in *Tilley* noted that

> the forfeiture of drug proceeds will always be directly proportional to the amount of drugs sold. The more drugs sold, the more proceeds that will be forfeited. [T]hese proceeds are roughly proportional to the harm inflicted upon government and society by the drug sale.

*Id.; See also United States v. Perez,* 70 F.3d 345, 349 (5th Cir.1995); *United States v. Clementi,* 70 F.3d 997, 999 (8th Cir.1995) (holding that "forfeiture of the fruits of illegal activity is rationally related to the damages of that activity").

Although it has not taken a clear position on whether forfeitures pursuant to § 881(a)(6) constitute punishment, the Second Circuit has had a recent occasion to consider the impact of the *Austin* holding on the continued viability of the Double Jeopardy analysis in *Halper. See United States v. All Assets of G.P.S. Automotive Corp.,* 66 F.3d 483 (2d Cir.1995). Noting that the Ninth Circuit's decision in *$405,089.23* is contrary to the rule in other circuits, the Court in *All Assets of G.P.S. Automotive Corp.* nevertheless described the Ninth Circuit's decision as "forceful." 66 F.3d at 492. Ultimately, though, the Second Circuit deferred resolution of the double jeopardy issues for another day.

Prior holdings of the Second Circuit, however, are consistent with the *Tilley* Court's conclusion that forfeitures of narcotics proceeds pursuant to § 881(a)(6) do not constitute punishment. *See United States v. 38 Whalers Cove Drive,* 954 F.2d 29, 35–36 (2d Cir.) (holding that forfeitures which serve legitimate civil purposes, such as removing instrumentalities of crime from use, or compensating the government for investigative and enforcement expenses, are not punishment), *cert. denied,* 506 U.S. 815, 113 S.Ct. 55, 121 L.Ed.2d 24 (1992); *United States v. $145,139,* 18 F.3d 73, 75 (2d Cir.) (holding that forfeiture of currency was not punishment because the currency was the instrumentality of a crime), *cert. denied,* —— U.S. ——, 115 S.Ct. 72, 130 L.Ed.2d 27 (1994); *United States v. $2,500,* 689 F.2d 10, 13–14 (2d Cir.1982) (holding that § 881(a)(6) has a remedial, non-punitive purpose, and that it was "[Congress'] indisputable legislative finding that money in the narcotics trade finances and assists future trade …"), *cert. denied,* 465 U.S. 1099, 104 S.Ct. 1591, 80 L.Ed.2d 123 (1984). *See also Erinkitola v. United States,* 901 F.Supp. 80, 85 (N.D.N.Y. 1995); *United States v. One 1990 Mercedes Benz,* 907 F.Supp. 541 (N.D.N.Y.1995) (citing *Tilley* favorably).

This Court finds the analysis in *Tilley* to be persuasive and consistent with *Austin, Halper* and applicable Second Circuit precedent, and accordingly concludes that the seizure of plaintiff's currency, which was subse-

quently forfeited pursuant to § 881(a)(6), does not constitute punishment. Moreover, the forfeiture in this case is clearly not disproportionate to the underlying criminal conduct. Plaintiff was charged with possessing and intending to distribute almost four kilograms of heroin. · *See United States v. Ye Wen Hong,* 93–190M, Criminal Complaint at ¶ 2. A forfeiture of $16,306 is plainly not disproportionate to the costs of investigating and prosecuting plaintiff's criminal conduct, or to the social costs imposed by the distribution of such a substantial amount of drugs. Finally, as noted above, the declaration of forfeiture was issued before plaintiff's criminal trial began and before her sentence was imposed. For these reasons, I respectfully recommend that plaintiff's double jeopardy claim be dismissed.

## IV. *Plaintiff's Eighth Amendment Claim*

Plaintiff's final claim is that the forfeiture of her currency violates the Excessive Fines Clause of the Eighth Amendment. Because this Court lacks jurisdiction over plaintiff's action, plaintiff's Eighth Amendment claim should be dismissed. *See Lopes v. United States,* 862 F.Supp. 1178, 1185 (S.D.N.Y. 1994).

Even if plaintiff's Eight Amendment claim were properly before the Court, it would be rejected. Plaintiff contends that the Supreme Court's decision in *Austin* compels the conclusion that the forfeiture of her currency is an excessive punishment under the Eighth Amendment. *See* Plaintiff's Statement of Claims at 5. In *Austin,* the Court ruled that the Excessive Fines Clause applies to all forfeitures pursuant to Sections 881(a)(4) and (a)(7) because "forfeiture under these provisions constitutes 'payment to a sovereign as punishment for some offense.'" 509 U.S. at ——, 113 S.Ct. at 2805 (quoting *Browning–Ferris Indus. v. Kelco Disposal, Inc.,* 492 U.S. 257, 265, 109 S.Ct. 2909, 2915, 106 L.Ed.2d 219 (1989)). The Court noted, however, that the prescriptions of the Excessive Fines Clause do not apply to a forfeiture that is purely remedial in nature. *Austin,* 509 U.S. at —— n. 14, 113 S.Ct. at 2812 n. 14 ("[A] fine that serves purely remedial pur-

poses cannot be considered 'excessive' in any event").

This Court, for the reasons discussed above, concludes that the forfeiture of plaintiff's currency pursuant to § 881(a)(6) does not constitute punishment. Plaintiff's Eighth Amendment claim should, therefore, be dismissed. *See United States v. $21,282,* 47 F.3d 972, 973 (8th Cir.1995) (holding that the "forfeiture of proceeds of criminal activity which 'simply parts the owner from the fruits of the criminal activity' does not constitute punishment and thus does not implicate the Eighth Amendment") (quoting *United States v. Alexander,* 32 F.3d 1231, 1236 (8th Cir. 1994)).

Even if the forfeiture of plaintiff's currency were punishment, it would not violate the Eighth Amendment because it was not excessive. The Second Circuit has set forth a "multi-factor test" for determining when a forfeiture is constitutionally excessive. *See All Assets of G.P.S. Automotive Corp.,* 66 F.3d at 501. In *United States v. Milbrand,* 58 F.3d 841 (2d Cir.1995), the Second Circuit explained that a court should consider

> (1) the harshness of the forfeiture (e.g., the nature and value of the property and the effect of forfeiture on innocent third parties) in comparison to (a) the gravity of the offense, and (b) the sentence that could be imposed on the perpetrator of such an offense; (2) the relationship between the property and the offense, including whether use of the property in the offense was (a) important to the success of the illegal activity, (b) deliberate and planned or merely incidental and fortuitous, and (c) temporally or spatially extensive; and (3) the role and degree of culpability of the owner of the property.

58 F.3d at 847–48.

Applying these factors to the instant case, it is clear that the forfeiture of plaintiff's currency was not excessive. First, the forfeiture of plaintiff's $16,306 was proportional to the severity of the underlying crime and the statutory fines which could have been imposed. Having been convicted after a jury trial of four felony narcotics charges, Ye Wen Hong was subject to a fine of at least $16,-

000,000. *See* 21 U.S.C. §§ 960(b)(1)(A) and 841(b)(1)(A)(i). Thus, in light of the Second Circuit's acknowledgment that "a fine of many thousands of dollars for a minor drug offense is not beyond the pale," the forfeiture of plaintiff's $16,306 was "not a grossly disproportionate punishment within the meaning of the Eighth Amendment." *Whalers Cove*, 954 F.2d at 39 (upholding the forfeiture of a condominium in which the claimant had a $68,000 equity interest and which was used in connection with isolated sales of 2½ grams of cocaine for $250).

Finally, the relationship between the forfeited currency and the underlying narcotics offenses was sufficiently strong to sustain the forfeiture against an Excessive Fines Clause challenge. As stated above, Ye Wen Hong's currency was forfeited pursuant to § 881(a)(6) as drug proceeds after a complete and uncontested administrative proceeding. Therefore, because the forfeiture of plaintiff's currency was proportional to the severity of the underlying offenses and the potential statutory fines for such conduct, and because the forfeited currency was sufficiently connected to these offenses, this Court respectfully recommends that Ye Wen Hong's Eight Amendment claim be dismissed.

### CONCLUSION

For the reasons stated above, I respectfully recommend that defendant's motion to dismiss plaintiff's claims concerning the forfeiture of her currency be granted. I further recommend that defendant be required to return plaintiff's jewelry no later than thirty days after plaintiff designates an address to which the jewelry should be sent. Any objections to the recommendations contained herein should be filed with the Clerk of the Court and with the chambers of the Honorable Reena Raggi within ten days of receipt of this report, but in any event no later then February 23, 1996. Failure to object to this report may waive the right to appeal the district court order. *See* 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 6(a), 6(e), 72; *Small v. Secretary of Health and Human Services*, 892 F.2d 15, 16 (2d Cir.1989).