William J. VANCE and Ronald
L. Vance, Petitioners,

v.

UNITED STATES of America,
Respondent.

No. 96–CV–73096–DT.

United States District Court,
E.D. Michigan,
Southern Division.

April 3, 1997.

Ronald L. Vance, Federal Correctional In-
stitution–Marianna, Marianna, FL, pro se.

Joseph J. Allen, Asst. U.S. Atty., Detroit,
MI, for Respondent.

### *OPINION AND ORDER*

ZATKOFF, District Judge.

#### I. INTRODUCTION

Before the Court is the recommendation of
Magistrate Judge Paul J. Komives on peti-
tioners' Motion for Return of Property pur-
suant to Fed.R.Crim.P. 41(e). The Court

finds that the facts and legal arguments are adequately presented in the parties' briefs, and the decisional process would not be significantly aided by oral argument. Therefore, pursuant to E.D. Mich. Local R. 7.1(e)(2), it is hereby Ordered that the motions be resolved on the briefs submitted.

On October 21, 1996, Magistrate Judge Komives recommended that the petitioners' Motion for Return of Property be construed as a civil complaint seeking equitable relief. Magistrate Judge Komives further recommended that this Court conclude that petitioners have raised a genuine issue of material fact with respect to whether the government has satisfied statutory and constitutional requirements regarding the forfeiture of petitioners' seized property, thus providing the Court with proper jurisdiction to consider petitioners' claims. Furthermore, Magistrate Judge Komives concluded that the general six-year statute of limitations provisions for actions against the United States, set forth in 28 U.S.C. § 2401(a), applies to petitioners' claim, and, that the petitioners filed their claim within this period. Finally, Magistrate Judge Komives recommended that this Court conclude that petitioners have raised a genuine issue of material fact with respect to William Vance's standing to contest the seizure and forfeiture of the property, and, also with respect to petitioners' diligence in prosecuting their claim, thus precluding application of the doctrine of laches.

On November 22, 1996, respondent filed an Objection to the Magistrate Judge's Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and E.D. Mich. Local R. 72.1(d)(2) requesting *de novo* review of the Magistrate Judge's decision. The Court has reviewed the Magistrate Judge's Report and Recommendation submitted in this case and any objections filed thereto. The Recommendation of the Magistrate Judge is hereby accepted in part and rejected in part: The Magistrate's Recommendations set forth in paragraphs (A)—(E) in Section I of the Report and Recommendation are hereby

ADOPTED as the opinion of this Court (Report and Recommendation, page 1); The Magistrate's Recommendation concluding that petitioners have raised genuine issue of material fact with respect to their diligence in prosecuting their claim, thus precluding application of the doctrine of laches is REJECTED. Now therefore, for reasons set forth below, the Court finds that the equitable doctrine of laches bars petitioners' claim in this equitable proceeding.

## II. FACTUAL BACKGROUND

In December 1990, a task force composed of various state and federal law enforcement officers conducted a series of searches and arrests. These searches and arrests were the product of a long-term investigation of a cocaine distribution operation between Miami, Florida and Detroit, Michigan, which ultimately led to the conviction of 20 people, including petitioner Ronald Vance, on various drug distribution offenses.[1] As part of this series of searches and arrests, on December 10, 1990 state and federal agents conducted a raid at a residence located at 23449 Hazelwood in Hazel Park, Michigan. The agents arrested Ronald Vance, and seized from the premises the property in question, a 1989 black and white Pantera powerboat with towing trailer, Vehicle Identification Number (VIN) WCW71203B989. Following the seizure of the boat, the Drug Enforcement Agency (DEA) initiated administrative forfeiture proceedings. On August 8, 1991, the DEA administratively forfeited the boat pursuant to 19 U.S.C. § 1609. Subsequent to its forfeiture of the boat, the DEA paid off a lien on the boat held by the National Bank of Detroit (NBD) in the amount of $9,460.06 and disposed of the property to another governmental agency.

On July 15, 1996, Petitioners filed a Motion for Return of Property in this Court seeking return of the boat, claiming that the seizure of the boat without a warrant was a violation of the Fourth Amendment and that the forfeiture of the boat was without written notice as required by 19 U.S.C. § 1607(a). The government responded by contending that

---

1. Ronald Vance is currently a prisoner in the federal prison system serving a sentence for his conviction. Co–Petitioner William Vance was not charged with participation in the drug conspiracy, or with any other crime.

the petitioners received adequate notice of the forfeiture of their boat. In the alternative, the government argued that a claim for return of the boat is actually a claim for equitable relief, and that the Court should decline to exercise its equitable jurisdiction because petitioners have an adequate remedy at law; petitioner lacks standing; and the claims are barred by the doctrine of laches.

## III. OPINION

### A. Latches and the Statute of Limitations

The Court having adopted the Magistrate Judge's Recommendation in all other relevant respects, the sole issue to be addressed by this Court concerns the application of the equitable doctrine of laches. The Magistrate's Recommendation concluded that the general six-year statute of limitation provisions for actions against the United States found under 28 U.S.C. § 2401(a) applies to petitioners' claim in this action. Contrary, the government contends that the petitioners' claim is barred by the equitable doctrine of laches. As stated in the Magistrate's Recommendation, there appears to be only two courts that have directly confronted the issue of what statute of limitations provisions apply to an equitable action challenging a deficient administrative forfeiture.[2] (Report and Recommendation, page 22, note 7).

 Regardless of whether this action falls under the general six-year statute of limitations, *the equitable doctrine of laches may still exist to bar petitioners claim irrespective of a controlling statute of limitations. Young v. Bradley*, 142 F.2d 658, 662 (6th Cir.1944); *Patterson v. Hewitt*, 195 U.S. 309, 25 S.Ct. 35, 49 L.Ed. 214 (1904). In the Sixth Circuit, there is a strong presumption that laches will not apply when the analogous statute has not run, *absent compelling reasons. Patton v. Bearden*, 8 F.3d 343, 348 (6th Cir.1993); *Elvis Presley Enterprises v.*

*Elvisly Yours Inc.*, 936 F.2d 889, 894 (6th Cir.1991); *Tandy Corp. v. Malone & Hyde, Inc.*, 769 F.2d 362, 365–66 (6th Cir.1985), *cert. denied*, 476 U.S. 1158, 106 S.Ct. 2277, 90 L.Ed.2d 719 (1986). However, laches may apply irrespective of the statute of limitations. *Young*, 142 F.2d at 662. Indeed, other Circuits have applied laches in cases governed by a statute of limitations. *See e.g. Maksym v. Loesch*, 937 F.2d 1237, 1248 (7th Cir.1991); *K–Mart Corp. v. Oriental Plaza, Inc.*, 875 F.2d 907, 911 (1st Cir.1989); *Azalea Fleet, Inc. v. Dreyfus Supply & Machinery Corp.*, 782 F.2d 1455, 1459 (8th Cir.1986).

Due to the lack of recognizable uniform application of the general six-year statute of limitations to equitable actions challenging a deficient administrative forfeiture procedure, and the compelling facts of this case, the Court finds the application of the laches analysis to be appropriate in this case.

### B. The Latches Standard

 According to BLACKS LAW DICTIONARY (5th Ed.), the "doctrine of laches is based upon the maxim that equity aids the vigilant and not those who slumber on their rights." *See* also *Kansas v. Colorado*, 514 U.S. 675, ——, 115 S.Ct. 1733, 1742, 131 L.Ed.2d 759 (1995). "The doctrine of laches is designed to promote diligence and prevent enforcement of a stale claim." *Jabbar–El v. Sullivan*, 811 F.Supp. 265, 271 (E.D.Mich. 1992) (citing *Waddell v. Small Tube Products, Inc.*, 799 F.2d 69, 74 (3rd Cir.1986)). Dismissal of a claim on the grounds of laches requires that there be (1) unreasonable and unexcused delay in bringing the claim, and (2) material prejudice to the defendant as a result of the delay. *A.C. Aukerman Co. v. R.L. Chaides Construction Co.*, 960 F.2d 1020, 1028 (Fed.Cir.1992) (en banc). To establish a laches defense, both of the above prongs must be met. Only then can the

---

**2.** In *Williams v. United States Drug Enforcement Administration*, 51 F.3d 732 (7th Cir.1995), the district court applied a two-year state statute of limitations to the plaintiff's claim. The plaintiff did not dispute that this was the applicable limitations period. However, the Seventh Circuit, recognizing that "the contours of these sorts of claims are largely undefined," declined to "express any opinion concerning the district court's

use of a two-year statute of limitations." *Id.* at 735. In *Concepcion v. United States*, 938 F.Supp. 134 (E.D.N.Y.1996), the court applied the six-year limitations period of § 2401(a), which the government argued applied, without analysis as to whether § 2401(a) is the appropriate limitations provision for these types of claims. *Id.* at 139.

Court weigh the delay and prejudice to determine whether justice requires that the claim be barred. *Advanced Cardiovascular Systems Inc. v. Scimed Life Systems, Inc.,* 988 F.2d 1157, 1161 (Fed.Cir.1993); *Gardner v. Panama R.R. Co.,* 342 U.S. 29, 31, 72 S.Ct. 12, 13–14, 96 L.Ed. 31 (1951). When applying the doctrine of laches to bar a claim, the period of delay is measured from when the claimant had actual notice of the claim, or, would have reasonably been expected to inquire about the subject matter. *Id.*

In the present case, the government has articulated compelling reasons in support of their laches defense.

## C. Analysis

### 1) Unreasonable and Unexcused Delay

■ To establish a laches defense, it must first be shown that there was unreasonable and unexcused delay on the part of the petitioners in bringing their claim. *A.C. Aukerman Co., supra.* It is indisputable that petitioners knew of the seizure of their boat in December of 1990. Petitioners have set forth no meritorious justification for their five year delay in commencing appropriate legal proceedings for the return of their boat. Petitioners' tenuous argument that their lack of diligence in pursuing their claim resulted from inadequate notice is nebulous insofar as petitioners own submissions demonstrate that they had actual knowledge that their boat had been seized in December of 1990. (Affidavit of Ronald Vance, para. 2–5; Affidavit of William Vance, para. 2–5) Furthermore, there is no question that the DEA did discharge its constitutional obligation to provide petitioners with published notice of the proposed forfeiture in a newspaper of general circulation. Petitioners waited nearly five years from the forfeiture of their boat to bring this claim, despite their actual knowledge of the seizure and forfeiture of the boat. Petitioners "slumbering" for more than five years before initiating legal proceedings is not diligent behavior in the eyes of this Court. "Courts have held that two years is a sufficient amount of time for a person who has not received official notice of the seizure, but, nevertheless knows his property has been seized, to make an effort to retrieve the property." *Hill v. United States,* 830 F.Supp. 270, 274 (E.D.Pa.1993). In this instant action, factual issues do not exist as to petitioners' knowledge of the forfeiture proceedings insofar as petitioners had actual knowledge of the seizure in December 1990. Hence, the first prong in bringing a laches defense has been satisfied: unreasonable and unexcused delay in bringing the claim.

### 2) Material Prejudice

■ The second prong that must be satisfied when bringing a laches defense is that defendant must be materially prejudiced as a result of reliance on the delay. *A.C. Aukerman Co., supra; Gardner v. Panama R.R. Co.,* 342 U.S. 29, 31, 72 S.Ct. 12, 13–14, 96 L.Ed. 31 (1951); *Jabbar–El,* 811 F.Supp. at 271. Subsequent to the seizure of the boat, and, properly publishing notice of the proposed forfeiture, the DEA declared the boat forfeited pursuant to 19 U.S.C. § 1609. Relying upon the finality of the forfeiture declaration, the DEA paid off a lien on the boat held by NBD in the amount of $9,460.06 and disposed of the boat to another government agency. Petitioners' lack of diligence in pursuing their claim caused the DEA to believe that the proposed forfeiture would not be challenged by the petitioners. Hence, the government would be prejudiced if petitioners were allowed to challenge the forfeiture more than five years after seizure insofar as the government cannot simply "undo" the forfeiture at this late date, and return the boat to the petitioners. The government has long paid the outstanding lien on the boat and has disposed of the boat. The government's prejudice as a result of Petitioners' delay in bringing this action satisfies the second prong of the laches defense. Hence, this Court finds that the elements of laches have been met in the instant case.

## IV. Conclusion

Regardless of the applicability of the general six-year statute of limitations set forth in 28 U.S.C. § 2401(a), petitioners are precluded from bringing this action due to the more than five year lapse between the time petitioners first learned of the seizure and the time they commenced action to regain their

property. Factual issues do not exist with respect to whether petitioners have diligently pursued their claim. Therefore, application of the equitable doctrine of laches bars petitioners' action.

Accordingly, for the reasons stated above, IT IS HEREBY ORDERED that petitioners' motion for return of property is DENIED, and petitioners' action is DISMISSED.

LET JUDGMENT BE ENTERED ACCORDINGLY.

## JUDGMENT

IT IS ORDERED AND ADJUDGED that pursuant to this Court's Order dated April 3, 1997, petitioners' action is DISMISSED.

## REPORT AND RECOMMENDATION

KOMIVES, United States Magistrate Judge.

I. *RECOMMENDATION:* The Court should:

A. Construe petitioners' "Motion for Return of Property" as a civil complaint seeking equitable relief;

B. Conclude that a valid waiver of the government's sovereign immunity exists via application of the Administrative Procedures Act;

C. Conclude that petitioners have raised a genuine issue of material fact with respect to whether the government satisfied statutory and constitutional notice requirements regarding the forfeiture of petitioners' boat, and thus the Court has jurisdiction to consider petitioners' claims;

D. Conclude that petitioner William Vance has raised a genuine issue of material fact regarding his standing to contest the seizure and forfeiture of his boat;

E. Conclude that the general six-year statute of limitations provision for actions against the United States found in 28 U.S.C. § 2401(a) applies to petitioners' claim, and that petitioners filed their claim within this period; and

F. Conclude that petitioners have raised a genuine issue of material fact with respect to their diligence in prosecuting their claim, precluding application of the doctrine of laches.

II. *REPORT:*

A. *Procedural Background*

Petitioners Ronald L. Vance and William J. Vance bring this motion for return of property pursuant to Fed.R.Crim.P. 41(e), seeking return of a powerboat seized by state and federal agents in December 1990 and administratively forfeited by the Drug Enforcement Administration (DEA) on August 8, 1991, pursuant to 19 U.S.C. § 1609. Petitioners contend that the seizure of the boat was unlawful and in violation of the Fourth Amendment, and that the forfeiture of the boat was imposed in violation of the Fifth Amendment.

In December 1990, a task force composed of various state and federal law enforcement officers conducted a series of arrests and searches. These arrests and searches were the product of a long-term investigation of a cocaine distribution organization operating between Miami, Florida and Detroit, Michigan, which eventually led to the conviction of over 20 people, including petitioner Ronald Vance, on various drug distribution offenses.[1] As a part of this series of searches and arrests, on December 10, 1990 state and federal agents conducted a raid at 23449 Hazelwood in Hazel Park, Michigan. The agents arrested Ronald Vance and seized from the premises a 1989 black and white Pantera powerboat with towing trailer, Vehicle Identification Number (VIN) WCW71203B989. Subsequent to its forfeiture of the boat, the DEA paid off a lien on the boat held by the National Bank of Detroit (NBD) in the amount of $9,460.06 and disposed of the property.

Petitioners now seek a return of their property, claiming that the seizure of the boat without a warrant was a violation of the

---

**1.** Petitioner William Vance was not charged with participation in the drug conspiracy or with any other crime. Ronald Vance is currently in a federal prison serving a sentence for his conviction.

Fourth Amendment and that the forfeiture of the boat was without written notice as required by 19 U.S.C. 1607(a). The government contends that the petitioners received adequate notice of the forfeiture of their boat. In the alternative, the government argues that the claim for return of the boat is actually a claim for equitable relief, and that the court should decline to exercise its equitable jurisdiction because petitioners have an adequate remedy at law, petitioner William Vance lacks standing, and the claims are barred by the doctrine of laches.

### B. Construction of Petitioners' Motion as a Civil Complaint

Petitioners brought this action as a motion for return of property pursuant to Fed. R.Crim.P. 41(e). Rule 41(e) of the Federal Rules of Criminal Procedure provides, in relevant part:

> A person aggrieved by an unlawful search and seizure or by the deprivation of property may move the district court for the district in which the property was seized for the return of the property on the ground that such person is entitled to lawful possession of the property. The court shall receive evidence on any issue of fact necessary to the decision of the motion. If the motion is granted, the property shall be returned to the movant, although reasonable conditions may be imposed to protect access and use of the property in subsequent proceedings.

Fed.R.Crim.P. 41(e). However, where the trial has concluded and there is no need for the property as evidence, Rule 41(e) is not the appropriate vehicle for seeking a return of property. In such a case, "the request for the return of the seized property is essentially a civil equitable proceeding, notwithstanding the fact that the motion was styled under Fed.R.Crim.P. 41(e)." *United States v. Duncan,* 918 F.2d 647, 654 (6th Cir.1990) (internal quotation and alterations omitted); accord *United States v. Robinson,* 78 F.3d 172, 174 (5th Cir.1996); *United States v. Giraldo,* 45 F.3d 509, 511 (1st Cir.1995); *United States v. Woodall,* 12 F.3d 791, 794 n. 1 (8th Cir.1993) (*pro se* pleading styled as a Rule 41(e) motion should be liberally construed as

seeking to invoke the proper remedy where criminal proceedings have ended); *Onwubiko v. United States,* 969 F.2d 1392, 1397 (2d Cir.1992) ("Where criminal proceedings have already been completed, a district court should treat a rule [sic] 41(e) motion as a civil complaint."); *United States v. Martinson,* 809 F.2d 1364, 1366–67 (9th Cir.1987) (treating Rule 41(e) motion as "civil equitable proceeding[ ]" when criminal proceedings have been completed). Accordingly, the Court should construe petitioners' motion for return of property as a civil complaint seeking to invoke the equitable powers of the Court.

### C. Jurisdiction to Consider Petitioners' Claims

#### 1. Jurisdiction Generally

Construing petitioners' pleading as a civil complaint, the Court must first determine whether it has jurisdiction to consider petitioners' claims. Plaintiffs' boat was administratively forfeited pursuant to the Tariff Act of 1930, 19 U.S.C. §§ 1600–1619; *see also* 21 C.F.R. §§ 1316.75–1316.79, which applies to property relating to drug transactions pursuant to 21 U.S.C. § 881. As succinctly summarized by the First Circuit in *Giraldo, supra:*

> These laws provide that property worth $500,000 or less is subject to administrative forfeiture without judicial involvement. 19 U.S.C. § 1607. The administrative process requires the government to publish notice of its intent to forfeit the property once a week for three weeks and to send written notice to any party known to have an interest in the property. *Id.* § 1607(a); 21 C.F.R. § 1316.75. A claimant then has 20 days after the first publication to file a claim and a cost bond of not less than $250. The filing of the claim and the bond stops the administrative process and requires the seizing agency to hand the matter over to the United States Attorney for the commencement of a judicial forfeiture proceeding. *Id.; see also* 21 C.F.R. § 1316.76(b). A claimant's failure to follow these procedures results in a declaration of forfeiture by the seizing agency and the vesting of title in the United States. 19 U.S.C. § 1609. This declaration has the same

effect as a final decree and order of forfeiture entered in a judicial proceeding. *Giraldo,* 45 F.3d at 510–11; *accord Linarez v. United States Dep't of Justice,* 2 F.3d 208, 210 (7th Cir.1993); *Dawson v. Drug Enforcement Admin.,* 927 F.Supp. 748, 751–52 (S.D.N.Y.1996).

Because of this statutory scheme, "once the administrative process has begun, a federal district court generally lacks subject matter jurisdiction to review the merits of an administrative forfeiture decision, including constitutional challenges to the search and seizure." *Dawson,* 927 F.Supp. at 752 (citations omitted); *accord Giraldo,* 45 F.3d at 510–11; *Toure v. United States,* 24 F.3d 444, 445–46 (2d Cir.1994); *Linarez,* 2 F.3d at 211–12; *Hong v. United States,* 920 F.Supp. 311, 315 (E.D.N.Y.1996); *Matthews v. United States,* 917 F.Supp. 1090, 1106 (E.D.Va.1996); *United States v. Schiavo,* 897 F.Supp. 644, 647 (D.Mass.1995); *Seber v. Unger,* 881 F.Supp. 323, 328 (N.D.Ill.1995); *Ogidi v. United States,* 857 F.Supp. 4, 6 (E.D.N.Y. 1994).

Despite this general rule that a district court lacks jurisdiction over an administrative forfeiture where no claim has been filed, "[t]he Court does, however, have limited jurisdiction to review a procedurally defective administrative agency decision." *Dawson,* 927 F.Supp. at 752; *accord Giraldo,* 45 F.3d at 511; *Toure,* 24 F.3d at 446; *Hong,* 920 F.Supp. at 315; *Ogidi,* 857 F.Supp. at 6. This jurisdiction is "limited to a review of the procedural propriety of the forfeiture." *Hong,* 920 F.Supp. at 315. Accordingly, the Court should consider petitioners' claim that they were not adequately notified of the forfeiture proceeding.

### 2. *Sovereign Immunity*

"[I]t is inherent in the nature of sovereignty not to be amenable to the suit of an individual without [the sovereign's] consent." THE FEDERALIST No. 81, at 487 (Alexander Hamilton) (Clinton Rossiter ed.1961). Accordingly, the United States enjoys immunity from suit except where it has explicitly consented to be sued. *Federal Deposit Ins. Corp. v. Meyer,* 510 U.S. 471, 474–76, 114 S.Ct. 996, 1000, 127 L.Ed.2d 308 (1994); *Leh-*

*man v. Nakshian,* 453 U.S. 156, 161, 101 S.Ct. 2698, 2701–02, 69 L.Ed.2d 548 (1981). In the administrative forfeiture setting, courts have found such a waiver of sovereign immunity in judicial review provisions of the Administrative Procedures Act (APA), 5 U.S.C. §§ 701–706. Under the APA, the government has consented to suit by persons seeking equitable relief from agency determinations. 5 U.S.C. § 702. Such a consent does not apply where judicial review is explicitly precluded by statute. 5 U.S.C. § 701(a)(1). Although the administrative forfeiture provisions preclude such judicial review, the courts have nonetheless allowed forfeiture challenges to proceed under the APA where the claimant challenges the adequacy of notice. As the court stated in *Taft v. United States,* 824 F.Supp. 455 (D.Vt. 1993):

> [I]t is by now well-recognized that in the forfeiture context, section 702 provides a waiver for issues relating to the adequacy of notice. *See, e.g., Sarit v. United States,* 987 F.2d 10, 17 (1st Cir.1993) (citing *Marshall Leasing, Inc. v. United States,* 893 F.2d 1096, 1102–03 (9th Cir.1990) and *Willis v. United States,* 787 F.2d 1089, 1092–93 (7th Cir.1986)); *Montgomery v. Scott,* 802 F.Supp. 930, 934 (W.D.N.Y.1992). That is, the APA waives sovereign immunity over [petitioners'] claims for equitable relief based on unconstitutional agency action. *Marshall Leasing,* 893 F.2d at 1099. The return of forfeited property or its monetary equivalent is equitable relief. *Id.* (citing *Bowen v. Massachusetts,* 487 U.S. 879, 108 S.Ct. 2722, 101 L.Ed.2d 749 (1988)).

*Taft,* 824 F.Supp. at 463; *see also, Lopes v. United States,* 862 F.Supp. 1178, 1186 (S.D.N.Y.1994) ("Despite the Government's argument to the contrary, courts have recognized that in the context of civil forfeitures, § 702 does provide a waiver of sovereign immunity for claims relating to the adequacy of notice."). Accordingly, a showing by petitioners that notice was statutorily or constitutionally inadequate will both provide this Court with jurisdiction and establish a waiver of sovereign immunity under the APA.

### 3. *Adequacy of Notice*

#### a. *Constitutional and Statutory Requirements*

It is a fundamental principle that the constitutional requirement of due process requires "notice, reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314, 70 S.Ct. 652, 657, 94 L.Ed. 865 (1950), *quoted in Giraldo*, 45 F.3d at 511. As the court explained in *Hong:*

> To satisfy due process, notice must be "reasonably calculated" to notify the claimant of the proceeding. This standard does not require that the claimant receive actual notice of a forfeiture proceeding, but rather, that the government act reasonably in selecting and employing a means likely to inform the claimant of the proceeding.

*Hong*, 920 F.Supp. at 316 (citations omitted). Furthermore, the customs laws themselves require the federal agency conducting the forfeiture to

> cause a notice of the seizure of such articles and the intention to forfeit and sell or otherwise dispose of the same in according to law to be published for at least three successive weeks.... Written notice of seizure together with the information on the applicable procedures shall be sent to each party who appears to have an interest in the seized article.

19 U.S.C. § 1607(a). Thus, in order to be valid, the DEA must have (1) published notice of its intent to forfeit the boat in a newspaper of general circulation within the Eastern District of Michigan for at least three successive weeks; and (2) made a reasonable effort to provide written notice to each person *appearing* to have an interest in the boat which was seized and forfeited.

#### b. *Adequacy of Publication Notice*

There is no question in this case that the DEA adequately published notice of its intent to forfeit the boat in a newspaper of general circulation. A notice of the government's intent to forfeit the boat, along with information concerning the procedures for contesting forfeiture, was published in *USA Today* on June 12, June 19, and June 26, 1991. Decl. of Vicki L. Rashid, ¶ 4(n) & Ex. 19. The Court may, and should, take judicial notice that *USA Today* is a newspaper of general circulation in the Eastern District of Michigan.[2] Accordingly, the Court should conclude that the government satisfied its burden of publishing notice of the proposed forfeiture in a newspaper of general circulation.

#### c. *Attempts to Serve Written Notice on Ronald Vance*

However, the Court should conclude that petitioners' have made a colorable claim that the government's attempts to serve actual, written notice on Ronald Vance were not sufficiently reasonable to satisfy the requirements of 19 U.S.C. § 1607(a) and due process. As the exhibits submitted by the gov-

---

**2.** Pursuant to Fed.R.Evid. 201, a court may take judicial notice of any fact "not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Fed. R.Evid. 201(b). Such notice may be "taken at any stage of the proceeding." Fed.R.Evid. 201(f).

Under Rule 201, it is appropriate for a court to take judicial notice of the circulation of newspapers within its jurisdiction. *See, e.g., Coggins v. United States*, 860 F.Supp. 845, 847 n. 1 (M.D.Ga.1994) (in forfeiture proceeding, "[t]he Court will take judicial notice that the Telegraph is a newspaper of general distribution and circulation in the Middle District of Georgia."); *Arnett v. Ricketts*, 665 F.Supp. 1437, 1440 (D.Ariz.1987) (taking judicial notice that *Arizona Republic* is circulated in Yavapi County, Arizona); *Newark Morning Ledger Co. v. United States*, 416 F.Supp. 689 (D.N.J.1975) (in federal tax case, court took judicial notice that taxpayer was state's only statewide newspaper, as well as its largest), *aff'd*, 539 F.2d 929 (3d Cir.1976); *Securities Exchange Comm'n v. Gulf Intercontinental Fin. Corp.*, 223 F.Supp. 987, 994 (S.D.Fla.1963) (court "takes judicial notice of the fact that various Canadian newspapers are offered on the news stands of Miami, Florida[.]"); *In re General Indus., Inc.*, 79 B.R. 124, 134 (Bankr.D.Mass.1987) ("The Court takes judicial notice of the fact that Worcester is the largest commercial and industrial center in the area, having a daily newspaper of general circulation in all cities and towns within Worcester County, including Rutland.").

ernment indicate, the government attempted to serve written notice on Ronald Vance via certified mail on several occasions, all of which attempts were unsuccessful. Specifically, written notice was sent to Ronald Vance:

- On February 19, 1991, to the Macomb County, Michigan jail, where Ronald Vance was thought to be incarcerated, Decl. of Vicki L. Rashid, ¶ 4(b) & Exs. 1–2;

- On February 19, 1991 to 2151 Kenneth, Apt. # 102, Royal Oak, Michigan, where Ronald Vance had recently dwelled, *id.*, ¶ 4(c) & Exs. 3–4;

- On June 3, 1991, to both the Macomb County jail and 2151 Kenneth, *id.*, ¶¶ 4(*l* ), (m), & Exs. 15–18.

However, petitioners allege that on January 18, 1991, Ronald Vance was transferred from the Macomb County jail to the custody of the Michigan Department of Corrections (MDOC) in Jackson, Michigan. At that time, the government filed a detainer on him with MDOC. Further, on June 4, 1991, this Court issued a writ of habeas corpus ad prosequendum to MDOC for Ronald Vance to be transferred to the custody of the United States Marshal for prosecution in this Court on his federal cocaine conspiracy charges. Thus, petitioners argue, the government was aware of Ronald Vance's actual location when it sent the notices to the Macomb County jail and to the 2151 Kenneth address.

As the court in *Woodall, supra,* recognized:

> When the government has actual knowledge of an interested party's whereabouts at the time the forfeiture is commenced, failure to direct the statutorily required personal notice to that address cannot be considered compliance with either the statute or minimum due process standards. Moreover, if the government is incarcerating or prosecuting the property owner when it elects to impose the additional burden of defending a forfeiture proceeding, fundamental fairness surely requires that either the defendant or his counsel

receive actual notice of the agency's intent to forfeit in time to decide whether to compel the agency to proceed by judicial condemnation.

*Woodall,* 12 F.3d at 794–95 (citations omitted); *accord Giraldo,* 45 F.3d at 511 (where claimant is residing at place of government's choosing, such as in prison, government "must take steps to locate the claimant in order to satisfy due process."); *cf. Robinson v. Hanrahan,* 409 U.S. 38, 40, 93 S.Ct. 30, 31–32, 34 L.Ed.2d 47 (1972) (per curiam). Here, petitioners have made a colorable claim that the government knew of Ronald Vance's location or that it was readily ascertainable, and thus that the government's attempts at actual notice were insufficient.

### d. Failure to Serve Written Notice on William Vance

With respect to William Vance, petitioners have likewise made a colorable claim that the government failed to conform to the requirements of actual notice contained in 19 U.S.C. § 1607(a) The government contends that it was not required to personally notify William Vance in writing, arguing that "because petitioner William Vance was not a record title holder of the boat, and the boat was seized from another party—Ronald Vance—DEA had no reason to attempt service upon William Vance." United States' Resp. to Mot. for Return of Property, at 4. However, this argument restricts the plain language of § 1607(a). By its terms, § 1607(a) is not restricted to persons who are either record titleholders or in possession of the property at the time it was seized. Rather, the clear language of the statute requires written notice to "each party who *appears to have an interest in the seized article.*" 19 U.S.C. § 1607(a) (emphasis added). Because the statute requires notice to a party having "*an* interest" in the seized property, the clear import of this statute is that any apparent interest is sufficient to trigger the written notice requirement, even though it may not be an actual ownership or possessory interest.[3] *Cf. Russello v. United States,* 464 U.S.

---

3. For example, "an" has been defined as "[t]he English indefinite article, equivalent to 'one' or 'any'; seldom used to denote plurality." BLACK'S

LAW DICTIONARY 84 (6th ed.1990). Furthermore, " [t]he word "any" is generally used in the sense of "all" or "every" and its meaning is most

16, 21, 104 S.Ct. 296, 299, 78 L.Ed.2d 17 (1983) (construing the forfeiture provision of RICO, 18 U.S.C. § 1963(a)(1), an "interest" in property is "[t]he most general term that can be employed to denote a right, claim, title, or legal share in something.") (quoting BLACK'S LAW DICTIONARY 729 (5th ed.1979)); *In re Lopez–Soto,* 764 F.2d 23, 26 (1st Cir. 1985) (For purpose of Fed.R.Civ.P. 24(a), which allows a party to intervene in an action by right if the party has "an interest in the property ... which is the subject of the action," any significantly protectable interest is sufficient); *Bigheart Pipeline Corp. v. United States,* 600 F.Supp. 50, 53 (N.D.Okla. 1984) (for purpose of federal tax lien statute, 26 U.S.C. § 6321, "interest in property" includes *any* "valuable, transferable interest," including a merely contingent interest created by contract); *In re M & L Business Mach. Co., Inc.,* 160 B.R. 851, 857 (Bankr. D.Colo.1993) (sections 547 and 548 of the Bankruptcy Code, 11 U.S.C. §§ 547 and 548, which prevent preferential transfers of any interest in property, "do not require that the transfers ... be of the *title* (legal or equitable) to property of the Debtor, but only of an interest of the debtor in property.") (emphasis in original); *Shinnecock, Inc. v. State Tax Comm'n,* 350 Mass. 648, 216 N.E.2d 98, 101 (1966) ("The word 'interest' may refer to a variety of forms of ownership."); *Graham v. City of Duncan,* 354 P.2d 458, 461 (Okla. 1960) (term "property" as used in state constitutional provision regarding taking of private property for public use includes "every valuable interest which can be enjoyed and recognized as property.").

On April 9, 1991, Charles Milne, an attorney representing NBD, filed a lienholder petition on behalf of NBD seeking to protect NBD's interest in the boat. This petition was returned because it was incomplete. Decl. of Vicki L. Rashid, Exs. 9–10. The properly completed petition was sent by Mr. Milne on May 7, 1991, including a cover letter addressed to the DEA's Asset Forfeiture Counsel. Following the address block, and immediately prior to the salutation, the letter reads, in bold letters:

**RE: William Vance**

 **1989 Pantera Power Boat, VIN WCW71203b989**

 **DEA Seizure No. 91510**

Decl. of Vicki L. Rashid, Ex. 12. Also attached to the petition is a copy of an NBD form "Installment Loan and Security Agreement," which indicates that on March 2, 1989, NBD and *William* Vance entered into a loan agreement whereby NBD loaned $10,571.78 to William Vance. This loan was secured by a 1989 Pantera boat with VIN WCW71203B989. William Vance is the only borrower indicated in the agreement. *Id.* Finally, the loan agreement further indicates that "the collateral[, *i.e.,* the boat,] will be purchased with this loan." *Id.*

Based on this loan agreement, which was provided to the DEA's Asset Forfeiture Counsel in early May, 1991, as of that date William Vance certainly "appears to have an interest in the seized article" so as to trigger the written notice requirement of § 1607(a). Indeed, the most reasonable inference from the loan document is that William Vance is the actual owner of the boat. Even if he is not the owner, however, the loan agreement creates an appearance of some sort of interest in the boat held by William Vance. Accordingly, the government was required to use reasonable efforts to provide written notice to William Vance as required by § 1607(a). Because the government admittedly failed to do so, the Court has jurisdiction to consider the underlying merits of William Vance's challenge to the forfeiture.[4]

---

comprehensive.' " *Fleck v. KDI Sylvan Pools, Inc.,* 981 F.2d 107, 115 (3d Cir.1992) (quoting *McCormick v. Columbus Conveyer Co.,* 522 Pa. 520, 564 A.2d 907, 910 (1989)) (construing Pennsylvania statute of repose); *see also, United States v. Rosenwasser,* 323 U.S. 360, 362–63, 65 S.Ct. 295, 296–97, 89 L.Ed. 301 (1945) ("any" employee as used in Fair Labor Standards Act includes all employees unless specifically excluded). Accordingly, the Court should construe the "an interest" language of § 1607(a) comprehensively, to include "all" or "every" interest, and not just those title or possessory interests.

4. The government's argument that publication notice alone was sufficient considering the fact that William Vance almost assuredly was aware of the forfeiture is without merit. Regardless of his knowledge, both § 1607(a) and the Constitution require reasonable attempts at written notice. *See* 19 U.S.C. § 1607(a); *Gutt v. United States,* 641 F.Supp. 603, 606 (W.D.Va.1986); *see*

D. *Adjudication of the Merits*

Having concluded that the Court has jurisdiction to consider petitioner William Vance's claims, it is appropriate to consider the other arguments raised by the government in opposition to petitioners' motion. Because, as indicated above, it is appropriate to construe petitioners' motion as a civil complaint, it is equally appropriate to treat the government's response as a motion for summary judgment pursuant to Fed.R.Civ.P. 56(c). Under Rule 56(c), summary judgment may be granted "if pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."

A fact is 'material' and precludes grant of summary judgment if proof of that fact would have [the] effect of establishing or refuting one of the essential elements of the cause of action or defense asserted by the parties, and would necessarily effect [the] application of appropriate principle[s] of law to the rights and obligations of the parties.

*Kendall v. Hoover Co.*, 751 F.2d 171, 174 (6th Cir.1984) (quoting BLACK'S LAW DICTIONARY 881 (6th ed.1979)). The Court must view the evidence in a light most favorable to the non-movant as well as draw all reasonable inferences in the non-movant's favor. *See United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962); *Bender v. Southland Corp.*, 749 F.2d 1205, 1210–11 (6th Cir.1984).

1. *William Vance's Standing to Challenge the Seizure and Forfeiture*

The government first contends that William Vance lacks standing to challenge the forfeiture because he cannot show that he is entitled to "lawful possession" of the boat. "[C]ourts have held that an allegation of ownership and some evidence of ownership are together sufficient to establish standing to contest a civil forfeiture." *Torres v. $36,256.80 U.S. Currency*, 25 F.3d 1154, 1158 (2d Cir.1994); *accord United States v. $38,570 U.S. Currency*, 950 F.2d 1108, 1113 (5th Cir. 1992) ("a claimant is required to submit some additional evidence of ownership along with his claim in order to establish standing to contest the forfeiture"); *United States v. 116 Emerson St.*, 942 F.2d 74, 78 (1st Cir.1991) ("At this preliminary juncture ... [a]ll that needs to be shown is a facially colorable interest in the proceedings sufficient to satisfy the case-or-controversy requirement and prudential considerations defining and limiting the role of the court.") (internal quotations omitted); *Matthews v. United States*, 917 F.Supp. 1090, 1104 (E.D.Va.1996). Indeed, one circuit has gone so far as to state that "a simple claim of ownership will be sufficient to create standing to challenge a forfeiture." *United States v. $191,910.00 in U.S. Currency*, 16 F.3d 1051, 1058 (9th Cir. 1994); *see also, United States v. 1992 Team Warlock 28' World Twin Hull Speedboat*, 875 F.Supp. 652, 654 (D.Ariz.1994).

Here, William Vance has averred in his affidavit accompanying petitioners' motion that he had a vested interest in the boat seized and forfeited by the DEA. Further, he has presented sufficient evidence of an ownership interest to establish standing at this stage of the proceedings. First, William Vance has made an at least colorable claim that he was, in fact, a record title holder of the boat. Although William Vance has not submitted evidence that he obtained a certificate of title in accordance with Michigan law, Exhibit C to petitioners' motion for return of property is a copy of a "Manufacturer's Statement of Origin to a Boat Sold in the State of Florida," covering the boat at issue in this case. In relevant part, Michigan law relating to watercraft provides: [5]

also, *United States v. $80,760.00 in U.S. Currency*, 781 F.Supp. 462, 466 n. 8 (1991); *Sarit v. Drug Enforcement Admin.*, 759 F.Supp. 63, 72 (D.R.I. 1991); *cf. Schroeder v. City of New York*, 371 U.S. 208, 212–13, 83 S.Ct. 279, 282, 9 L.Ed.2d 255 (1962) ("notice by publication is not enough with respect to a person whose name and address are known or very easily ascertainable and whose legally protected interests are directly affected by the proceedings in question.").

5. In *United States v. Certain Real Property Located at 2525 Leroy Lane*, 910 F.2d 343 (6th Cir. 1990), the court held:

We see no language in the civil forfeiture provisions which would mandate the application

(1) A person acquiring a watercraft from the owner of the watercraft, whether the owner is a manufacturer, importer, dealer, or otherwise, shall not acquire any right, title, claim, or interest in or to the watercraft until the person has issued to him or her a certificate of title to the watercraft, *or delivered a manufacturer's or importer's certificate for the watercraft* . . . .

(2) A court shall not recognize the right, title, claim, or interest of a person in or to a watercraft sold or disposed of, or mortgaged or encumbered, unless:

(a) Evidenced by a certificate of title *or a manufacturer's or importer's certificate* issued pursuant to this part.

Mich. Comp. Laws § 324.80305. Furthermore, the manufacture's certificate submitted by petitioners includes a description of the boat, the date of transfer, the name and address of the transferee (William Vance), and the signature and address of a representative of the manufacturer, as required by Mich. Comp. Laws § 324.80306. Further, under Michigan law relating to watercraft, " '[o]wner' means a person who claims or is entitled to legal possession of a vessel by virtue of that person's legal title or equitable interest in a vessel." Mich. Comp. Laws § 324.80103(i). Accordingly, William Vance has made at least a colorable claim of legal ownership to the boat sufficient to withstand the government's argument at this stage of the proceedings. Furthermore, the documents included in the government's response from NBD, identifying William Vance as the mortgagee, provide further evidence of ownership.

Relying on *United States v. Premises Known as 526 Liscum Drive*, 866 F.2d 213 (6th Cir.1989), the government argues that William Vance's claim must fail because he has failed to make a *prima facie* showing that he exercised "control and domain" over the property. As *526 Liscum Drive* states, the claimant must do more than show bare legal title; he must also "present evidence of dominion and control or other indicia of true ownership." *Id.* at 217. Based on this reasoning, the government argues that William Vance lacks standing because he was not asserting dominion and control over it at the time it was seized. This argument misreads *526 Liscum Drive*. The case does not, as the government seems to contend, stand for the proposition that a claimant must show dominion and control over the forfeited property to establish standing. Rather, *526 Liscum Drive* holds that, where the government presents evidence that the claimant is merely a straw owner for someone else, the claimant must show some indicia of true ownership, and that exercise of dominion and control is one such indicator. The following passage clearly shows the limits of the court's holding:

Claimant has failed to come forth with evidence sufficient to create a genuine issue of material fact as to her standing to contest the forfeiture. Her affidavit simply states that she holds legal title to the property; it contains no information indicating that she has dominion and control over the property or that she is anything other than a nominal or straw owner. *We hold that when the government establishes probable cause to believe that a claimant is merely a nominal or straw owner, as it has done here, a claimant cannot meet its burden of establishing standing to challenge a forfeiture by presenting proof of legal title alone.* The claimant must also present evidence of dominion and control or other indicia of true ownership.

*Id.* at 217 (emphasis added). Further, noting that the government had presented sufficient evidence that the claimant was a mere straw owner, the court explicitly refused to "decide the issue of whether a claimant is required to

---

of a federal common law of property. We conclude that recognition of state laws governing property rights does not contravene the federal forfeiture scheme, and that the application of state law is the most appropriate method of determining the interest of an owner under 21 U.S.C. § 881(a)(7). *Id.* at 347. Accordingly, "[i]n drug forfeiture actions, an owner's interest in property is de-

fined by state law rather than federal law." *United States v.1977 Porsche Carrera 911*, 946 F.2d 30, 34 (5th Cir.1991); *see also, United States v. One 1973 Rolls Royce, V.I.N. SRH–16266*, 43 F.3d 794, 805 n. 8 (3d Cir.1994); *United States v.1980 Lear Jet, Model 35A, Serial Number 277*, 38 F.3d 398, 402 (9th Cir.1994).

show more than legal title in the absence of such a probable cause showing of lack of true ownership." *Id.* Here, the government has not presented any evidence, nor even alleged, that William Vance is a mere nominal or straw owner. Thus, *526 Liscum Drive* is distinguishable, and does not alter the conclusion that William Vance has shown sufficient indicia of ownership to establish standing. *See also, United States v. 1992 Team Warlock 28' World Twin Hull Speedboat,* 875 F.Supp. 652, 654 (D.Ariz.1994) ("The problem with the government's position is that in all of the cases it cites, the courts found that the claimants were strawmen holding title as a subterfuge for a drug trafficker only after weighing the evidence submitted by the parties. The procedural posturing of this case is quite different.").

### 2. *Statute of Limitations*

#### a. *Applicable Statute of Limitations Provision*

Before addressing the government's laches argument, the Court must first consider the appropriate statute of limitations provision applicable to petitioners' claims. The statute of limitations issue is important for two reasons. First, because the limitations period is an integral component of the federal government's limited waiver of sovereign immunity, "[c]ompliance with the limitations period is a condition of federal court jurisdiction." *Kendall v. Army Bd. for Correction of Military Records,* 996 F.2d 362, 366 (D.C.Cir.1993) (citing *Soriano v. United States,* 352 U.S. 270, 77 S.Ct. 269, 1 L.Ed.2d 306 (1957)). Second, "[u]nder equitable principles, the statute of limitations applicable to analogous actions at law is used to create a 'presumption of laches.'" *Jabbar-El,* 811 F.Supp. at 271; *accord Elvis Presley Enters., Inc. v. Elvisly Yours, Inc.,* 936 F.2d 889, 894 (6th Cir.1991) ("[I]n this Circuit there is a strong presumption that a plaintiff's delay is reasonable so long as the analogous statute of limitations has not elapsed."); *Tandy Corp. v. Malone & Hyde, Inc.,* 769 F.2d 362, 365–66 (6th Cir.1985), *cert. denied,* 476 U.S. 1158,

106 S.Ct. 2277, 90 L.Ed.2d 719 (1986). The government argues that this presumption applies here because petitioners did not assert their claim within five years of the seizure.

However, the government's reliance on the five year limitation period is misplaced. Under 19 U.S.C. § 1621 and 21 U.S.C. § 881(d), the *government* has five years from the date of seizure in which to commence administrative forfeiture proceedings. However, this limitations period regulates the government's conduct, not that of private parties. Rather, the most analogous statute of limitations period, construing petitioners' motion as a civil complaint, is the general six year statute of limitations for actions against the United States set forth in 28 U.S.C. § 2401(a), which provides:

> Except as provided by the Contract Disputes Act of 1978, every civil action commenced against the United States shall be barred unless the complaint is filed within six years after the right of action first accrues. The action of any person under legal disability or beyond the seas at the time the claim accrues may be commenced within three years after the disability ceases.

28 U.S.C. § 2401(a). As a number of courts of recognized, "[t]his bar applies to *all* civil actions, whether legal, equitable, or mixed." *Kendall,* 996 F.2d at 365 (D.C.Cir.1993) (emphasis added); *see also, Mason v. Judges of the U.S. Ct. of App. for the D.C. Cir.,* 952 F.2d 423, 425 (D.C.Cir.1991); *Sierra Club v. Penfold,* 857 F.2d 1307, 1315 (9th Cir.1988) (applying § 2401(a) to challenge under the APA based on an agency's failure to properly promulgate regulations); *Swann v. Garrett,* 811 F.Supp. 1336, 1338–39 (N.D.Ind.1992) (applying § 2401(a) in nonmonetary action seeking reformation of Navy service record); *Eli Lilly & Co. v. Environmental Protection Agency,* 615 F.Supp. 811, 822 (S.D.Ind.1985) ("This statute applies to the case at bar, as it does to every action brought in a United States district court, other than a criminal or an admiralty proceeding.").[6] Accordingly the

---

6. This approach is consistent with the modern definition of "civil action" embodied in the Federal Rules of Civil Procedure. Fed.R.Civ.P. 2 ("There shall be one form of action to be known as 'civil action.'"); *see also,* Fed.R.Civ.P. 1 ("These rules govern the procedures in the United States district courts in all suits of a civil

Court should conclude that the six-year statute of limitations provision of 28 U.S.C. § 2401(a) applies, both for jurisdictional purposes and for analyzing the government's laches argument.[7]

### b. Application of the Six–Year Limitations Period to Petitioners' Claim

As § 2401(a) requires, in order to satisfy the jurisdictional requirement imposed by the statute, petitioners' must have brought their action within six years of the date their right of action "accrued." 28 U.S.C. § 2401(a). The Court need not decide, however, precisely when petitioners' right of action accrued. The earliest date on which it could be argued that petitioners' right of action accrued is the date of the actual seizure of the boat in December, 1990. Petitioners filed their motion for return of property on July 15, 1996. Accordingly, whether the petitioners' right of action accrued at the time of seizure, forfeiture, or at some other time thereafter, petitioners have satisfied the six-year limitations period of § 2401(a). Accordingly, the statute of limitations is not a bar to petitioners' claim.

### 3. Laches

The government also contends that petitioners' claim is barred by the equitable doctrine of laches. As the Supreme Court of Kentucky has summarized,

> Laches is an equitable doctrine, the elements of which are short of an estoppel, and the time in which it may ripen is short of the applicable period of limitation, and it is invoked in equity to defeat a tardy litigant on account of whose inexcusable delay, after possession of knowledge

of the facts, his adversary, who has materially changed his situation, may defeat a recovery or defense because of the other's passiveness, if during the delay, and in reliance on such nonaction, a change has occurred in the situation and condition of the adversary to such an extent that to uphold the action and to grant the relief would put it beyond the power of the adversary to restore himself to his former situation or the court to place him in status quo.

*Klineline v. Head,* 205 Ky. 644, 266 S.W. 370, 372 (1924), *quoted with approval in Wells v. United States Steel & Carnegie Pension Fund, Inc.,* 950 F.2d 1244, 1250 (6th Cir. 1991). "The doctrine of laches is designed to promote diligence and prevent enforcement of a stale claim." *Jabbar–El v. Sullivan,* 811 F.Supp. 265, 271 (E.D.Mich.1992) (citing *Waddell v. Small Tube Prods., Inc.,* 799 F.2d 69, 74 (3d Cir.1986))

To establish a laches defense, defendants must show both lack of diligence on the part of the plaintiff, and prejudice resulting from reliance thereon. *Gardner v. Panama R.R. Co.,* 342 U.S. 29, 31, 72 S.Ct. 12, 13–14, 96 L.Ed. 31 (1951); *Wells,* 950 F.2d at 1250; *Goodman v. McDonnell Douglas Corp.,* 606 F.2d 800, 804 (8th Cir.1979), *cert. denied,* 446 U.S. 913, 100 S.Ct. 1844, 64 L.Ed.2d 267 (1980); *Jabbar–El,* 811 F.Supp. at 271.

The government contends that petitioners were not diligent in prosecuting their claim by waiting nearly five years from the forfeiture of their boat to bring this claim, despite their knowledge of the seizure and forfeiture of the boat. However, as noted above, "in this Circuit there is a strong presumption that a plaintiff's delay is reasonable so long as the analogous statute of limitations has

nature whether cognizable as cases at law or in equity. . . .").

**7.** It appears that only two courts have directly confronted the issue of what statute of limitations provision applies to an equitable action challenging a procedurally deficient administrative forfeiture, but neither of these is useful in this case. In *Williams v. United States Drug Enforcement Admin.,* 51 F.3d 732 (7th Cir.1995), the district court had applied a two-year state statute of limitations for constitutional claims to the plaintiff's claim. The plaintiff did not dispute that this was the applicable limitations period. However,

the Seventh Circuit, recognizing that "the contours of these sorts of claims are largely undefined," declined to "express any opinion concerning the district court's use of a two-year statute of limitations." *Id.* at 735. More recently, in *Concepcion v. United States,* 938 F.Supp. 134 (E.D.N.Y.1996), the court applied the six-year limitations period of § 2401(a), which the government argued applied, without analysis as to whether § 2401(a) is the appropriate limitations provision for these types of claims. *Id.* at 139.

not elapsed." *Elvis Presley Enters.*, 936 F.2d at 894; *accord Patton v. Bearden*, 8 F.3d 343, 347 (6th Cir.1993); *National Football League v. Rondor, Inc.*, 840 F.Supp. 1160, 1167 (N.D.Ohio 1993); *Sprinklets Water Ctr., Inc. v. McKesson Corp.*, 806 F.Supp. 656, 663 (E.D.Mich.1992). Here, petitioners filed their claim within the appropriate limitations period. Thus, a presumption arises in their favor that the delay in filing their claim was reasonable.

Furthermore, factual issues exist as to petitioners' knowledge of the forfeiture proceedings. For example, William Vance avers that following the seizure of the boat, he attempted to obtain information concerning the boat from both this Court and from a special agent of the FBI who interviewed him, but was unable to obtain any information. Mot. for Return of Property, Ex. E, Aff. of William John Vance, at ¶¶ 4–5. Likewise, Ronald Vance avers that he made several attempts to find out information about the seizure of the boat both from this Court and the DEA. Mot. for Return of Property, Ex. D., Aff. of Ronald Lee Vance, ¶ 8; *see also*, Pet'rs' Resp., Ex. A., Letter from John H. Langer to Ronald Vance dated 10/25/95 (concerning Freedom of Information Act request by Ronald Vance). Accordingly, at a minimum factual issues exist with respect to whether petitioners have diligently pursued their claim. *See, e.g., Taft v. United States*, 824 F.Supp. 455, 466 (D.Vt.1993) (in claim challenging administrative forfeiture two years after seizure of the property, existence of factual disputes precluded finding that plaintiff's delay was unreasonable).[8]

### E. *Conclusion*

In view of the foregoing, the Court should:

1. Construe petitioners' "Motion for Return of Property" as a civil complaint seeking equitable relief;

2. Conclude that a valid waiver of the government's sovereign immunity exists via application of the Administrative Procedures Act;

3. Conclude that petitioners have raised a genuine issue of material fact with respect to whether the government satisfied statutory and constitutional notice requirements regarding the forfeiture of petitioners' boat, and thus the Court has jurisdiction to consider petitioners' claims;

4. Conclude that petitioner William Vance has raised a genuine issue of material fact regarding his standing to contest the seizure and forfeiture of his boat;

5. Conclude that the general six-year statute of limitations provision for actions against the United States found in 28 U.S.C. § 2401(a) applies to petitioners' claim, and that petitioners filed their claim within this period; and

6. Conclude that petitioners have raised a genuine issue of material fact with respect to their diligence in prosecuting their claim, precluding application of the doctrine of laches.

### III. *NOTICE TO PARTIES REGARDING OBJECTIONS:*

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. section 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir.1981); *Thomas v. Arn*, 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of Health & Human Services*, 932 F.2d 505 (6th Cir.1991). Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *Smith v. Detroit Federation of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir.1987); *Willis v. Secretary of Health & Human Services*, 931 F.2d 390, 401 (6th Cir.1991). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

---

**8.** Because the party asserting laches must show both inexcusable delay and prejudice, the Court need not consider whether the government was prejudiced by petitioners' delay.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

Dated: Oct. 21, 1996.